IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 1:24-cr-00363 |
| | ) | |
| NEIL DAUBACH | ) | |
| | ) | |
| | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

*ELECTRONICALLY FILED*

The United States of America, by counsel, files its memorandum in support of sentencing in this action, which is currently scheduled for October 16, 2025. Defendant Neil Daubach, a former correctional officer at the Eastern Correctional Institution in Westover, Maryland has pled guilty to one count of witness tampering, 18 U.S.C. §1512(b)(3), and one count of 18 U.S.C. § 1519, falsification of records. The United States concurs with the sentencing recommendation of U.S. Probation and requests that the Court sentence the Defendant to concurrent terms of 15 months of incarceration and one year of supervised release.

I.      **Factual Background**

From 2019 to 2022, the Defendant worked as a correctional officer ("CO") at the Eastern Correctional Institution ("ECI") in Westover, Maryland.  As detailed below, while working at ECI, the Defendant witnessed another correctional officer repeatedly punch an inmate, K.K., without justification.  After the incident, the Defendant lied about the assault—a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI"), an agency of the United States—in a written report and in three interviews with state investigators, with the intent to keep investigators, including FBI agents, from learning of the incident.  The Defendant admits that his conduct violated 18 U.S.C. §§ 1512(b)(3) and 1519.

1

Specifically, on July 12, 2021, the Defendant, then age 42, was working in ECI's Housing Unit 4. During his shift, the Defendant was called to follow two other COs, CO S.W. and CO A.W., into the unit's property room, where the Defendant assumed that a strip search would occur. The Defendant did follow CO S.W. and CO A.W. into the property room, where he saw inmate K.K.—an Inmate Observational Aid ("IOA") who worked on Unit 4—inside the property room. The Defendant was surprised that K.K. was going to be strip searched, because—while strip searching IOAs is within the discretion of ECI COs—he had never had any problems with K.K. warranting such a search.

Inside the property room, K.K. walked to the back of the room, where instructions for strip searches were posted on a double door. Per protocol, K.K. faced the door and began to read the instructions aloud. K.K. did begin to strip. However, while doing so, K.K. made lewd comments about the officers not being able to see his "dick" if he were facing the door. Despite making inappropriate comments, K.K. did not pose any threat of harm to himself or to any of the officers and otherwise complied with the strip search instructions.

Nevertheless, CO S.W. handcuffed K.K. behind his back, with K.K.'s compliance, and escorted K.K. toward the door leading into and out of the property room. Before CO S.W. and K.K. reached the door, the Defendant saw CO S.W. intentionally push K.K. into the property room gate and then to the ground, with evident malice—even though K.K. had not made any aggressive move—while K.K. remained handcuffed behind his back. Once K.K. was on the ground, CO S.W. punched him repeatedly in the head and face, in view of the Defendant, all while K.K. was handcuffed behind his back. At no time during CO S.W.'s assault on K.K. did K.K. pose a threat of harm or escape. The Defendant was surprised by the assault and recognized in the moment that it was entirely unjustified.

After the assault, other officers entered the property room and, along with the Defendant, escorted K.K. for a medical evaluation and a monitored strip search. At that time, K.K. was bleeding and visibly injured, crying, and accusing CO S.W. of assault.

That evening, CO S.W. wrote a false account of these events in his incident report and read that report aloud to several correctional officers, including CO A.W. and the Defendant. CO A.W. copied that false account into his report. The Defendant understands that CO S.W.'s and CO A.W.'s reports were false because they described events that did not happen and omitted events that did happen.

In addition, the Defendant wrote a false account of these events in his incident report. The Defendant's account was false because, among other defects, the Defendant falsely implied that he had reported to the property room after the use of force had occurred and omitted that he had seen CO S.W. push K.K. into the property room gate and ground, and omitted that he had seen CO S.W. punch K.K. The Defendant knew that he was required to report the incident fully and truthfully in his report, but he knowingly and purposefully lied in his report to conceal CO S.W.'s misconduct and the fact that he had witnessed it.

After submitting his false written report to a supervisor at ECI, the Defendant also lied to investigators who were reviewing the incident on behalf of the Maryland Department of Public Safety and Correctional Services ("DPSCS"). The Defendant first lied about the incident to DPSCS investigators on August 4, 2021, when he adopted CO S.W. and CO A.W.'s false version of the incident and affirmatively denied that he had seen CO S.W. assault K.K. The Defendant again lied about the incident to DPSCS investigators on August 25, 2021 and April 26, 2022, when he made similar false statements.

## II.    Criminal History

The United States agrees with Probation that the Defendant has a criminal history score of zero and thus a criminal history category of I.

## III.    Guidelines Calculation

The United States agrees with Probation's total offense level calculation in the initial presentence report. The initial presentence report calculates the total offense level, including acceptance of responsibility, to be 14.

## IV.    Section 3553(a) Factors

This Court must ultimately affix a sentence which is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). Taking into consideration all of the Section 3553(a) sentencing factors, a sentence of two concurrent terms of 15 months incarceration with one year of post release supervision is sufficient but not greater than necessary.

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The nature and circumstances of the Defendant's criminal conduct warrant a 15-month sentence. The Defendant's false reports not only disrupted the investigations into the assault on K.K., but they also significantly interfered with another core governmental function: preventing future uses of excessive force by identifying and isolating officers who have violated use of force policies. The Defendant protected CO S.W. by writing a false report that covered up his abuses, and in doing so, chose to secure CO S.W.'s career over the future safety of other inmates in his custody and care. A prison cannot protect its inmates from future assaults by rogue officers if it is unaware that an assault has already occurred. The Defendant's blatant disregard for this governmental function is crystal clear as he continued to lie about what he witnessed even a year

after the assault.

**B. Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

A 15-month incarceration sentence would reflect the seriousness of the offense to the public by demonstrating that when a law enforcement officer violates his oath and public trust, there will be real and lasting consequences. The gravity of the Defendant's offense is aggravated not only by his position of authority and public trust, but also by his persistence to cover up the assault despite the many opportunities he had to come clean. To be clear, this is not a case where the Defendant made one poor decision in the heat of the moment. He repeated his lies over time to conceal the blatant misconduct by his fellow officer.

**C. The Need to Afford Adequate Deterrence to Criminal Conduct**

The Court should consider the need for specific and general deterrence. One of the sentencing goals under §3553(a) is to warn the Defendant, members of law enforcement, and the general public that committing these types of violations will have consequences. Law enforcement officers who violate an individual's rights also violate public trust, and in turn, public safety suffers as a result. In this vein, the message should be delivered that obstructing state and federal criminal investigations will have appropriate repercussions. To that end, any sentence lower than 15 months would demonstrate that law enforcement officers are held to a different, more lenient standard of punishment.

**D. The Need to Protect the Public from Further Crimes of the Defendant.**

As noted, the Defendant has no criminal history, however, there is a need to protect the public from the Defendant's crimes, specifically as a law enforcement officer. A 15-month prison sentence would ensure that the Defendant would not be certified as a law enforcement officer by any state certification agency.

## V.     Conclusion

For the reasons set forth herein, the United States respectfully requests that the Court apply the Sentencing Guidelines, as outlined above, follow the statutory directives set out in 18 U.S.C. § 3553(a), accept the plea agreement, and impose a sentence of two concurrent terms of 15 months of incarceration with one year of post-release supervision.

Respectfully submitted,

KELLY O. HAYES                                          HARMEET K. DHILLON
United States Attorney                                  Assistant Attorney General
District of Maryland                                    Civil Rights Division

*/s/ Michael Aubin*                                     */s/ Anita T. Channapati*
By: Michael Aubin                                       By: Anita T. Channapati
Assistant United States Attorney                        Trial Attorney
36 S. Charles Street 4th Fl.                            950 Pennsylvania Ave. NW
Baltimore, MD 21201                                     Washington, DC 20530
Tel. (410) 209-4800                                     Tel. (202) 598-1033
michael.aubin@usdoj.gov                                 anita.channapati@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 2, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel for the defendant.

 s/ *Anita T. Channapati*
Anita T. Channapati
Trial Attorney