IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. MJM-24-363 |
| | * | |
| JERMAINE STURGIS, | * | |
| | * | |
| Defendant. | * | |
| | * | |

**********

# GOVERNMENT'S OMNIBUS *MOTION IN LIMINE*

The Government respectfully moves in limine for rulings that:

(1) Preclude entirely any references to the criminal conviction of victim K.K.[1];

(2) Admit statements of the defendant related to his desire to delete Facebook messages as consciousness of guilt; and

(3) Include the words "aiding and abetting" in the jury instructions for Count Three of the Indictment.

For the reasons that follows, the Government's motion should be granted in its entirety.

## BACKGROUND

### A. The Assault and Resulting Cover Up.

On July 12, 2021, Samuel Warren, a correctional officer at the Eastern Correctional Institution ("ECI"), repeatedly punched and assaulted an inmate, K.K., an inmate serving a sentence for sex abuse and related offenses, without justification, while K.K. was handcuffed. Shortly after, officers from the Maryland Department of Public Safety and Correctional Services'

---

[1] Consistent with the request to shield the offenses of conviction, the government further seeks to refer to K.K. by only his initials.

1

("DPSCS") Intelligence and Investigative Division ("IID") began to investigate Warren's use of force against K.K. The FBI also initiated an investigation of Warren's use of force in late 2021.

Based on that investigation, investigators learned that two ECI correctional officers, Neil Daubach and Ananias Wilson, were present for Warren's assault of K.K. In addition, Warren, Daubach, Wilson, and several additional ECI correctional officers, including at least David Quillen, Daric Evans, and the defendant, were involved in a conspiracy to cover up evidence of the assault and in fact did cover up such evidence.

At trial, the government will elicit testimony and introduce evidence that on July 12, 2021, the day of the assault, several correctional officers authored false and misleading reports about the assault and subsequent events. That same day, the defendant and other correctional officers viewed a video that was recorded by Quillen in the aftermath of the assault, which contained evidence that an unlawful assault had actually occurred, including depicting the injuries sustained by K.K., K.K. visibly crying, K.K. alleging the assault, and K.K's pleas for the responding correctional officers to do the right thing. The defendant determined that the video was too damning and told Warren, Quillen, and Evans that it should be deleted.

They all agreed to do so, and as a result, Quillen deleted the video that day. The defendant and other correctional officers also agreed to lie about the deletion of the video, and correctional officers, including the defendant, lied to state and federal law enforcement officers about the use of force and their knowledge of the incident.

As a result of the FBI's investigation, Warren, Quillen, and Evans have pleaded guilty to federal charges related to the assault and/or cover up, and Wilson has pleaded guilty to related state charges. In an interview with the government, Warren disclosed that the defendant had been

involved in the agreement to delete the incriminating video. Quillen and Evans also disclosed that information to the government, and the defendant's role in the video deletion is referenced in the statements of fact supporting their guilty pleas. Nevertheless, in interviews with state and federal law enforcement, the defendant withheld the fact that he knew the incriminating video had been deleted and made affirmative statements indicating that he did not know what had happened to the video.

### B. Indictment and Arrest

On December 12, 2024, a District of Maryland grand jury returned a sealed six-count indictment against the defendant and Neil Daubach for their roles in the cover up. The grand jury charged the defendant with the following offenses related to the cover up of the assault: (1) Conspiracy to Obstruct Justice, 18 U.S.C. § 371; (2) Destruction of Records, 18 U.S.C. §§ 2, 1519; (3) Witness Tampering, 18 U.S.C. § 1512(b)(3); and (4) False Statements, 18 U.S.C. § 1001(a)(2).

On December 18, 2024, Special Agents Elizabeth Hung and Patrick Cavazos arrested the defendant in connection with the above charges at ECI's administrative building.

Immediately following his arrest, while he was being escorted out of ECI, the defendant asked agents if he could obtain access to his phone. At the time, the defendant's phone was located inside his vehicle. The defendant further inquired if agents would be viewing the defendant's phone while he was using it. SA Hung indicated that they would need to do so.

During the escort, the agents brought the defendant to his vehicle to deposit his belongings. While in his vehicle, the defendant obtained his phone and began manipulating it, including by logging into it. While manipulating his phone, the defendant stated that he needed to "delete messages," then added that that he wanted to "delete Facebook messages." These comments were

3

unprompted and not responsive to any questions by the agents. In response, the agents informed the defendant that it was not the time to delete messages. The defendant then returned his phone to the vehicle, after which investigators transported the defendant to the Baltimore federal courthouse to be processed and for an initial appearance.

Later that same day, December 18, 2024, SA Hung served a preservation request on Meta to preserve the defendant's Facebook account and associated records for 90 days. On December 18, 2024, at approximately 7:13 p.m., Facebook sent an email that stated that Facebook had "taken reasonable steps to preserve the available data on the account(s) [she] requested."

The next day, December 19, 2024, United States Magistrate Judge Mark Coulson of the United States District Court of Maryland signed a search and seizure warrant for the defendant's phone, based on the above and other facts, including Quillen's statement to the government, on May 8, 2024, that the defendant had sent him a message via Facebook messenger, after the federal investigation had commenced, asking Quillen to provide him (the defendant) with copies of the use of force reports that ECI officers had filed regarding Warren's assault of K.K.

On December 19, 2024, SA Hung seized the defendant's phone from the defendant pursuant to the search and seizure warrant. A review of the contents of the defendant's phone revealed that the Facebook mobile application was installed on the defendant's phone. The Facebook mobile application was used 8 times between November 27, 2024 and December 10, 2024, not used from December 10, 2024 to December 17, 2024, used one time on December 18, 2024 (the date of the defendant's arrest), and used seven times on December 19, 2024 (the date the phone was seized from the defendant's), indicating an aberrantly high use of the application one day after the defendant stated, in the midst of his arrest, that he wanted to "delete Facebook

messages."

Additionally, the Facebook mobile application on the defendant's phone was used between November 27, 2024, and December 10, 2024, for a total of approximately 83 seconds, and again on December 18, 2024, for approximately 12 seconds. However, the application was used on December 19, 2024, for a total of approximately 127 minutes, again indicating highly aberrational use the day after the defendant's arrest.

Further, despite the fact that the defendant's phone contained thousands of Facebook-associated images, it did not contain any Facebook messages, including the above-mentioned Facebook message that, according to Quillen, the defendant sent to Quillen requesting copies of the use of force reports that ECI officers had filed regarding Warren's assault of K.K.

In May 2025, SA Hung sought and obtained a search warrant for records related to the defendant's Facebook account. Consistent with the dearth of information located in the phone, the records provided by Meta, Facebook's parent company, appeared to show an account that had been wiped clean. It contained no images, messages, posts, friends, or any indication that it had ever been used.

## ARGUMENT

**A. K.K.'s Convictions Bear no Relevance to the Case at Bar and Should be Precluded as Unfairly Prejudicial and Misleading to the Jury.**

Should the government call K.K. as a witness, the defense should be precluded from offering the nature of his convictions against him as impeachment. There is even less reason for the defense to broach the topic of K.K.'s criminal record if K.K. does not testify at all.

As a general rule, the Federal Rules of Evidence provide that relevant evidence is admissible. Fed. R. Evid. 402. The Court, however, may exclude otherwise relevant evidence if its

probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, causing undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. The determination under Rule 403 is within the sound discretion of the trial Court. *United States v. Masters*, 622 F.2d 83, 87 (4th Cir. 1980).

Character evidence is not admissible to prove that a person acted in conformity therewith. Fed. R. Evid. 404(a)(1). This includes a prohibition of character evidence concerning an act or wrong to prove an individual acted in conformity on a particular occasion. Fed. R. Evid. 404(b)(1).

Fed. R. Evid. 404(a)(3) provides limited instances under which a party may seek to admit character evidence, including a prior conviction under Fed. R. Evid. 609, that a witness be called to testify. Rule 609(a) states in relevant part:

> **(a) In General**. The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>
> **(1)** for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
>
> **(A)** must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant.

As the rule makes clear, the balancing test is a crucial component of the Court's determination, and will not simply be rubberstamped if its probative value outweighs any unfair prejudicial effect that admitting it may have on the witness. *See United States v. Carroll*, 663 F. Supp. 210 (D. Md. 1986) (holding that a conviction for bank larceny was admissible because it was reflective of a common scheme and identity of the defendant, and a bank robbery conviction was admissible because it showed elements of deceit, but a prior felony theft conviction did not involve dishonesty or false statements and was not admissible to impeach defendant in absence of showing that evidence was more probative than prejudicial); *United States v. Peterson*, 945 F.3d

144, 158 (4th Cir. 2019) (holding that the trial court properly precluded references to the felony convictions of the appellant's cooperating co-conspirator at trial where it determined that the probative value would be slight but the prejudicial value would be significant).

Here, there are several reasons why the introduction of K.K's conviction would be unfairly prejudicial and misleading to he jury. First, K.K.'s testimony would be limited to information about the assault in the property room—an assault that did not involve the defendant and would not likely be in dispute. Second, K.K.'s recollection of the assault would be substantially corroborated by at least one other witness who observed it firsthand. Third, there can be little doubt that K.K. was serving a sentence at the time of the offense. It is a fact of consequence in the case and will undoubtedly play a role in the jury's duty to assess his credibility, should he testify. *Peterson*, 945 F.3d at 158 (noting that "[the witness's] incarcerated status was already on full display before the jury because he chose to wear his jumpsuit to trial"). Fourth, the nature of K.K's offenses of conviction are particularly reviled by the masses, and any references to them would only serve to nullify the criminal conduct of the defendant and his co-defendants.

Assuming *arguendo* that the Court were to determine a reference to the defendant's criminal conviction was appropriate, it should limit the defense to eliciting testimony that the defendant was convicted of a felony punishable by imprisonment for more than one year, consistent with the holding in *Old Chief v. United States*, 519 U.S. 172 (1997). *See also United States v. Beahm*, 664 F.2d 414, 419 (4th Cir. 1981) (noting that the trial court could have "at the very least limited disclosure to the fact of conviction without revealing its nature.").

In short, K.K.'s convictions bear little relevance to the case at bar. To require K.K. to answer about the nature of his convictions would significantly and unfairly prejudice both K.K.

7

individually and the government. In the absence of his testimony, they would bear no relevance at all. Accordingly, the Court should preclude the defendant from referencing it during any cross examination of K.K. or at any other time during the trial.

### B. The Defendant's Statements Regarding his Desire to Delete his Facebook Messages are Admissible Under Federal Rule of Evidence 801(d)(2)(A)

The statements made immediately after the defendant was placed under arrest, and the corresponding conduct are admissible as a matter of course, and highly probative of his guilt in the instant case.

Hearsay, an out of court statement offered for the truth of the matter asserted, is generally inadmissible. Fed. R. Evid. 801(c), 802. However, pursuant to Rule 801(d)(2)(A), the Federal Rules of Evidence that governs admissions of a statements of a party opponent, is admissible if:

> **(2) An Opposing Party's Statement.** The statement is offered against an opposing party and:
>
> **(A)** was made by the party in an individual or representative capacity.

*See also United States v. Benson*, 957 F.3d 218, 229 (4th Cir. 2020) (stating that "a defendant's own statements constitute 'admissions by a party-opponent and [are] admissible pursuant to' this Rule." (quoting *United States v. Wills*, 346 F.3d 476, 489 (4th Cir. 2003)). All evidence, including statements pursuant to 801(d)(2) are subject to the relevance requirements of Rule 401.

The government intends to admit statements that defendant needed to "delete Facebook messages," in connection with the furtive conduct of the defendant during his brief interaction with the phone prior to arriving for his initial appearance, and the subsequent activity on the Facebook application in his phone upon returning home are clearly relevant.

They all speak to the strong probability that the defendant deleted messages before investigators were able to retrieve them from Meta. The unprompted statements and conduct, taken together, are the personification of consciousness of guilt. The government will seek the following corresponding jury instruction:

> Instruction 6-14 Consciousness of Guilt from Falsification of Evidence
>
> You have heard testimony that the defendant knowingly attempted to falsify evidence in this case. If you find that the defendant attempted to falsify evidence in order to mislead investigating authorities, you may, but need not, infer that the defendant believed that he was guilty. You may not, however, infer on the basis of this alone, that the defendant is, in fact, guilty of the crime for which he is charged.
>
> Whether evidence that the defendant falsified evidence shows that the defendant believed that he was guilty and the significance, if any, to be given to such evidence, are matters for you, the jury, to decide.

Sand, Siffert, *Modern Federal Jury Instructions*, 6-14.

These records speak to the defendant's desire to again mislead investigators. His statements provide context, and should be admitted.

**C. The Inclusion of the Words "Aiding and Betting" is Supported by Longstanding Precedence.**

The Government respectfully moves this Court to include the words "aiding and abetting" in its jury instructions for Count Three of the Indictment. Count Three of the Indictment reads as follows:

> On or about July 12, 2021, in the District of Maryland, the defendant, Jermaine Sturgis, acting in relation to and in contemplation of a matter within the jurisdiction of the FBI, an agency of the United States, knowingly destroyed and concealed, and counseled, induced, and willfully caused to be destroyed and concealed, a record and tangible object with the intent to impede,

obstruct, and influence the investigation and proper administration of that matter. Specifically, the defendant, in an effort to cover up the unlawful assault, recommended to other officers known and unknown to the Grand Jury that a video containing evidence of Warren's unreasonable use of force against K.K. should be deleted.18 U.S.C. § 1519; 18 U.S.C. § 2.

Although the language in Count Three does not include the words "aiding and abetting," it does cite to and contain the language from the relevant aiding and abetting statute, 18 U.S.C. §2: which reads:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

The Government's proposed jury instructions include references to aiding and abetting, as well as the statute itself. Moreover, the proposed jury instructions also delve into the alternative theories contained within Count Three for determining the Defendant's liability in the destruction of records. To add clarity to the jury instructions, the Government moves for the inclusion of the words "aiding and abetting" in the Court's instruction to the jury for Count Three, as indicated in the Proposed Jury Instructions.

**1. Inclusion of the words "aiding and abetting" in the jury instructions would not alter the Indictment, as the Government is not required to include the Section 2 language to charge the Defendant under an aiding and abetting theory.**

In the Fourth Circuit, vicarious liability that is based on having aided or abetted the crimes of another does not need to be charged in an indictment. *United States v. Wills*, 346 F.3d 476, 495 (4th Cir. 2003); *Pigford v. United States*, 518 F.2d 831, 834 (4th Cir. 1975) (An indictment need not specifically charge aiding and abetting to support a conviction on that charge.). *See also United*

*States v. Dodd*, 43 F.3d 759, 762–63 (1st Cir. 1995) (recognizing that aiding and abetting is implicit in all indictments for substantive offenses and therefore need not be specifically pleaded); *United States v. Perry*, 643 F.2d 38, 45 (2d Cir. 1981) ("[T]he provision of 18 U.S.C. § 2 can be read into an indictment which specifically charges only a substantive offense."); *United States v. Scroger*, 98 F.3d 1256, 1262 (10th Cir.1996) (citation omitted). The aiding and abetting statute describes the manner in which a defendant's conduct resulted in the violation of a particular law, speaking only to agency and causation principles. *United States v. Ashley*, 606 F.3d 135, 143 (4th Cir. 2010). The statute provides that a person is punishable "as a principal" if he "aids, abets, counsels, commands, induces or procures" the commission of a federal offense or "willfully causes" another to do an act that would be criminal if he performed it himself. 18 U.S.C. § 2. Because this provision does not set forth an essential element of the offense with which the Defendant is charged or itself create a separate offense, aiding and abetting liability need not be charged in an indictment. *United States v. Jaensch*, 665 F.3d 83, 96 (4th Cir. 2011). On that basis, a defendant can be convicted as an aider and abettor even though he was indicted as a principal for commission of the underlying offense and not as an aider and abettor." *United States v. Rashwan*, 328 F.3d 160, 165 (4th Cir. 2003). Given that government is not required to specifically plead aiding and abetting in order to charge the defendant accordingly at trial, then the inclusion of the words "aiding and abetting" in the jury instructions would not alter the charges in any way against the Defendant.

    **2. The addition of the words "aiding and abetting" in the jury instructions would not be a constructive amendment or fatal variance.**

When the government, through its evidence or its argument, or the district court, through its instructions to the jury broadens the bases for conviction beyond those charged in the indictment, a constructive amendment—sometimes referred to as a fatal variance—occurs. *United*

11

*States v. Malloy*, 568 F.3d 166, 178 (4th Cir. 2009). To constitute a constructive amendment, the variance must in essence "change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment." *Id*. Any other variance "does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense." *United States v. Ashley*, 606 F.3d 135, 141 (4th Cir. 2010).

Here, the government included in Count Three two alternative theories of aiding and abetting that comport with the language of Sections 2(a) and 2(b) respectively. Adding the words "aiding and abetting" to the jury instructions cannot be a surprise to the Defendant, when the count itself contains the two means and mens rea from the subsections of the aiding and abetting statute. Because all of the elements necessary to find the Defendant guilty of the crime of violating 18 U.S.C. § 1519, whether as a principal or as aider or abetter, will be put before the jury, any conviction therefrom will be proper. *United States v. Rashwan*, 328 F.3d 160, 165 (4th Cir. 2003) (if all the elements are given to the jury, "the precise language used in the indictment, by the prosecution, or in the jury instructions is unimportant").

The government is not required to set forth with detail the government's evidence or enumerate every possible legal and factual theory of the defendant's guilt in the indictment. *United States v. Le*, 310 F. Supp. 2d 763, 773 (E.D. Va. 2004) (quoting *United States v. Am. Waste Fibers Co.*, 809 F.2d 1044, 1047 (4th Cir. 1987)). Because the Indictment sufficiently sets forth the allegations against the Defendant in Count Three, adding the words "aiding and abetting" to the jury instructions would not prejudice the Defendant.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court grant the government's Omnibus Motion *In Limine*.

                                                Respectfully submitted,

                                                Kelly O. Hayes
                                                United States Attorney

By:       /s/
            Michael F. Aubin
            Assistant United States Attorney
            Anita T. Channapati
            Trial Attorney
            United States Department of Justice